UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JONATHON A. SHARKEY, | ) | CASE NO. 1:07 CV 1089 |
| Plaintiff, | ) | |
| | ) | JUDGE KATHLEEN M. O'MALLEY |
| v. | ) | |
| SPREE MONEYPENNY-SHARKEY, et al., | ) | MEMORANDUM OF OPINION AND ORDER |
| Defendants. | ) | |

On April 13, 2007, pro se plaintiff Jonathon A. Sharkey, aka "The Impaler," filed this diversity action against his wife, Spree Moneypenny-Sharkey, and his mother-in-law, Sandra Moneypenny. In the complaint, plaintiff asserts that his wife engaged in domestic violence, adultery, and defamation of character. He asserts that his mother-in-law intimidated him, defamed his character and harassed him. He seeks monetary damages.

**Background**

The plaintiff, Jonathon Sharkey, contends that he is a vampire. He indicates that he is the 2008 presidential candidate for the Vampires, Witches and Pagans ("VWP") Party. While his party's platform includes positions on issues like education, and the war in Iraq, it also includes a promise to impale all of their enemies. Mr. Sharkey has filed this as a diversity action. He claims

that because of the numerous death threats he receives as the leader of the VWP party, he will not provide the court with his address. He states only that he is a resident of New Jersey. His wife, Spree Moneypenny ("Spree") and his mother-in-law, Sandra Moneypenny, reside in Brunswick, Ohio.

Mr. Sharkey, 42, claims he and Spree met on the internet in August of 2005. Spree was 17 years old at the time. He contends that although he was "quite taken" by Spree, he told her to contact him again when she turned 18. On October 4, 2006, Spree once again initiated contact with Mr. Sharkey via the internet. He claims they began dating on October 9, 2006. He proposed to her three weeks later on October 28, 2006 and moved to Ohio on November 2, 2006. He claims he and Spree were married on November 4, 2006.

The honeymoon period of their marriage was short-lived. Mr. Sharkey claims that four days after the wedding, Spree attacked him after she overheard Mr. Sharkey on the telephone saying that "upon becoming president, he would impale his father-in-law James Moneypenny... ." (Compl. at 3.) He further contends that she became angry with him on several other occasions and hit him with his Star Wars Lightsaber. He notes another occasion in which he was very ill and his new wife walked out of their apartment. He states that on January 26, 2007, she punched him in the nose.

Mr. Sharkey states that his wife was unfaithful to him from the date of their marriage and was not "acting like a potential First Lady." (Compl. at 5.) He claims she continued to role play on the internet with men. Spree allegedly told Mr. Sharkey on February 19, 2007, that she was going to West Virginia to visit an aunt who had suffered a stroke. She was gone from the marital residence until February 28, 2007. He claims he later discovered that she never left Brunswick,

Ohio.  On February 25, 2007, during her absence from the marital home, she used a video web camera to expose herself to a man on the internet.  She allegedly began "dating" a man from Idaho on the internet on February 28, 2007.  Mr. Sharkey claims that he told Spree he was moving to New Jersey the following day.  She allegedly asked him to stay and they attempted reconciliation on March 1, 2007.  Later that evening, however, she went to a "goth club" with three male friends and did not return home to the marital residence.

In addition to infidelity, Mr. Sharkey contends that Spree made statements that made him look foolish.  She posted negative comments about him on the "WitchWars 2" website.  He claims she also told him she was pregnant.  He claims he released this information to the media during his presidential campaign.  He states he discovered on April 6, 2007 that she was not pregnant.

Mr. Sharkey alleges that his mother-in-law, Sandra Moneypenny, hated him from the day he and Spree became involved.  He claims she assaulted him by lighting a cigarette in his presence.  He states he asked her to stop and she hit the right side of his nose with her cigarette causing him pain. He claims that in October 2006, when he was arranging his arrival in Cleveland for the wedding, Sandra called law enforcement officials in an attempt to keep him from coming to Brunswick.  He contends she continually referred to him as a pedophile.  Mr. Sharkey claims that Sandra continues to interfere with his relationship with Spree.  He states that on December 28, 2007, he went to O'Hares Bar to retrieve his cell phone and his vampire cross from Spree.  He indicates he brought several members of the Brunswick police department with him.  Mr. Sharkey alleges that Sandra interfered with the officers' attempts to speak with Spree.  He further states that his mother-in-law threatened to have him charged with stalking and harassment if he returned to Cleveland.

Finally, Mr. Sharkey alleges that she mocked his membership in Vampires, Witches, and Pagans against Impaired Driving.

Mr. Sharkey asserts four claims against Spree. He contends that she committed domestic violence and adultery, defamed his character, and subjected him to emotional distress. He asserts that Sandra also committed domestic violence, violated his right of pursuit of happiness, defamed his character, and harassed him. He seeks $ 4,000,000.00 in punitive damages from Spree and $ 2,000,000.00 in damages from Sandra.

## Analysis

While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may dismiss an action sua sponte if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)(citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). The claims asserted in this action satisfy these criteria.

As an initial matter, a plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction. Fed.R.Civ.P. 8. In a diversity action, "the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed." Washington v. Sulzer Orthopedics, Inc., No. 03-3350, 2003 WL 22146143, at *1 (6th Cir. Sept. 16, 2003) quoting Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co., 177 F.3d 210, 222 n. 13 (3d Cir.1999). Mr. Sharkey contends that he recently moved from Ohio to a location in New Jersey which he refuses to disclose. The court has no address for Mr. Sharkey and no way to contact him. He indicates in his complaint that at some later date he will provide the

court with a post office box for correspondence. On the same date Mr. Sharkey filed this action in federal court claiming he resided somewhere in New Jersey, he filed an action in the Medina County Court of Common Pleas against his mother-in-law, Sandra Moneypenny, listing his address as 2131 Pearl Road, #7, Brunswick, OH 44212.[1] On April 23, 2007, ten days after this complaint was filed, Mr. Sharkey filed a Report of Receipts and Disbursements, FEC Form 3, with the Federal Election Committee in connection with his run for president in 2008 indicating a change of his address to P.O. Box 11, Brunswick, Ohio.[2] For purposes of diversity jurisdiction, one is a citizen of the state in which he or she is domiciled. Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir.1983). Domicile, in turn, is the combination of physical presence in a location and an intent to remain there indefinitely. Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989). Diversity jurisdiction hinges on a party's domicile, not merely his or her residence in a state, and "domicile is established by physical presence in a place in connection with a certain state of mind concerning's one intent to remain there." Id. Courts look to numerous factors to determine domicile, such as where an individual files state taxes, registers to vote, and lists his or her permanent address. Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir.1992). General allegations of residence, such as listing a post office box, however, are insufficient to establish citizenship. Martinez v. Martinez, 62 Fed. Appx. 309, 313-14 (10th Cir.2003). Considering his vague allegations concerning his residence and his refusal to provide this court with an address, he has not pled sufficient facts to satisfy his burden to establish this court's jurisdiction.

Furthermore, it does not appear that this case meets the jurisdictional amount in

---

[1] See http://www.co.medina.oh.us/.

[2] See http://www.fec.gov/.

controversy requirement. In a federal diversity action, the amount in controversy alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount. See Klepper v. First Am. Bank, 916 F.2d 337, 340 (6th Cir.1990). In this case, Mr. Sharkey derives his amount in controversy primarily from punitive damages. He does not specify an amount he seeks in compensatory damages, and, based upon the nature of his claims, those damages would be nominal, at best. Under Ohio law, a court may not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages or ten percent of the individual defendant's net worth when the tort was committed. OHIO REV. CODE § 2315.21(D)(2)(b). There is nothing in the complaint that reasonably suggests that the damages in this case could meet the jurisdictional requirement.

Finally, even if Mr. Sharkey could demonstrate that this court's jurisdiction could be predicated on diversity of citizenship, it is apparent from the complaint and its attachments that the underlying claims are, in substance, a matter for the domestic relations court. Federal Courts have no jurisdiction over actions which in essence are domestic relations disputes. McLaughlin, 193 F.3d at 412; Firestone v. Cleveland Trust, 654 F.2d 1212, 1215 (6th Cir. 1981). These cases involve local problems which are "peculiarly suited to state regulation and control and peculiarly unsuited to control by federal courts." Id. For this reason, it is incumbent upon the district court to examine the claims of the complaint and to determine the true character of the dispute to be adjudicated. Id. Although plaintiff characterizes this as a federal diversity action, it is clear from the complaint and the relief requested that he is asking this court to punish his wife for marital indiscretions and his mother-in-law for failing to welcome him into the family. This court lacks jurisdiction to grant this type of relief.

Moreover, it is equally apparent that this action was filed for the sole purpose of harassing the defendants. Mr. Sharkey attaches to his complaint a reconciliation agreement in which Spree is told that if she does not agree to his terms she will be "in for years in court." (Compl. Ex. 2.) He also threatened to seek criminal charges against her unless she complied with his demands. His promise to continue to pursue litigation against her for years is not merely a hollow threat. Mr. Sharkey has established a four year pattern of filing multiple vexatious and harassing lawsuits in federal courts under various names, including Rocky Flash, Rocky Hurricane, Darth Hurricane, Jonathon Sharkey, Jonathon "the Impaler" Sharkey, Kathleen Sharkey, and Lourdes Sharkey, against Spree's predecessor, Susan Holtsclaw. He filed at least 28 such cases in the United States District Court for the Southern District of Indiana and 5 cases in the United States District Court for the Middle District of Florida.[3] This Court is authorized to dismiss an action sua sponte which

---

[3] See Flash v. Holtsclaw, Case No. 8:02 CV 00168 (M.D. Fla. filed Jan. 30, 2002); Flash v. Holtsclaw, Case No. 8:02 CV 00313 (M.D. Fla. filed Feb. 19, 2002); Flash v. Holtsclaw, Case No. 8:02 CV 00314 (M.D. Fla. filed Feb 19, 2002); Hurricane v. USA, Case No. 8:03 CV 1263 (M.D. Fla. filed June 18, 2003);Hurricane v. Miller, Case No. 6:03 CV 1863 (M.D. Fla. filed Dec. 29, 2003); Flash v. Cotty, Case No. 1:02 CV 1444 (S.D. Ind. filed Sept. 18, 2002); Flash v. Cotty, Case No. 1:02 CV 1468 (S.D. Ind. filed Sept. 23, 2002); Flash v.Indiana, Case No. 1:03 CV 205 (S.D. Ind. filed Feb. 11, 2003); Flash v. Holtsclaw, Case No. 1:03 CV 206 (S.D. Ind. filed Feb. 11, 2003); Flash v. Holtsclaw, Case No. 1:03 CV 207 (S.D. Ind. filed Feb. 11, 2003); Flash v. Holtsclaw, Case No. 1:03 CV 208 (S.D. Ind. filed Feb. 11, 2003); Hurricane v. Holtsclaw, Case No. 1:03 CV 626 (S.D. Ind. filed May 1, 2003);Hurricane v. Moberly, Case No. 1:03 CV 644 (S.D. Ind. filed May 5, 2003); Hurricane v. Moberly, Case No. 1:03 CV 644 (S.D. Ind. filed May 5, 2003); Hurricane v.Barker, Case No. 1:03 CV 1095 (S.D. Ind. filed July 25, 2003);Hurricane v. Holtsclaw, Case No. 1:03 CV 1465 (S.D. Ind. filed Oct. 7, 2003); Hurricane v. Holtsclaw, Case No. 1:03 CV 1466 (S.D. Ind. filed Oct. 7, 2003); Hurricane v.Indiana, Case No. 1:03 CV 1587 (S.D. Ind. filed Oct. 29, 2003); Hurricane v. Barnes, Case No. 1:03 CV 1984 (S.D. Ind. filed Oct. 29, 2003);Hurricane v.Bradford, Case No. 1:03 CV 1614 (S.D. Ind. filed Nov. 3, 2003); Hurricane v. Holtsclaw, Case No. 1:03 CV 2022 (S.D. Ind. filed Dec. 22, 2003);Hurricane v. Holtsclaw, Case No. 1:04 CV 001 (S.D. Ind. filed Jan. 2, 2004);Hurricane v. Holtsclaw, Case No. 1:04 CV 0064 (S.D. Ind. filed Jan. 12, 2004); Flash v. Miller, Case No. 1:04 CV 1797 (S.D. Ind. filed Nov. 1, 2004);Flash v. Cotty, Case No. 1:05 CV 171 (S.D. Ind. filed Feb. 2, 2005); Flash v. Holtsclaw, Case
(continued...)

is frivolous and is brought for the sole purpose of harassing others. Apple, 183 F.3d at 479. As Mr. Sharkey's pleading is clearly intended for this purpose, this action is dismissed.

### Conclusion

Accordingly, this action is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

s/ Kathleen M. O'Malley
KATHLEEN M. O'MALLEY
UNITED STATES DISTRICT JUDGE

DATED: May 15, 2007

---

[3](...continued)
No. 1:05 CV 587 (S.D. Ind. filed April 21, 2005); Flash v.Miller, Case No. 1:05 CV 588 (S.D. Ind. filed April 21, 2005); Flash v. Hortman, Case No. 1:05 CV 768 (S.D. Ind. filed May 23, 2005); Flash v. Merchant, Case No. 1:05 CV 837 (S.D. Ind. filed June 2, 2005); Sharkey v. Holtsclaw, Case No. 1:05 CV 838 (S.D. Ind. filed June 2, 2005); Flash v. Holtsclaw, Case No. 1:05 CV 910 (S.D. Ind. filed June 16, 2005); Flash v.Horstman, Case No. 1:05 CV 929 (S.D. Ind. filed June 21, 2005);Flash v. Anderson, Case No. 1:06 CV 671 (S.D. Ind. filed April 26, 2006). Mr. Sharkey was enjoined from filing further lawsuits in the United States District Court for the Southern District of Indiana on December 9, 2005. See Sharkey v. Holtsclaw, Case No. 1:05 CV 838 (S.D. Ind. filed June 2, 2005).

[4] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.